1

JS-6

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

12

MARIA RODRIGUEZ,                    )    CASE NO. CV 18-3876-R
                                    )
13                                  )
                    Plaintiff,      )    ORDER GRANTING DEFENDANT'S
14                                  )    MOTION FOR SUMMARY JUDGMENT
          v.                        )
15                                  )
                                    )
16   NEW HAMPSHIRE BALL BEARINGS,   )
     INC.; ET AL.,                  )
17                                  )
                    Defendants.     )
18   _____)

19

20        Before the Court is Defendant's Motion for Summary Judgment, filed on December 7,

21   2018.  (Dkt. No. 22).  Having been briefed by both parties, this Court took the matter under

22   submission on January 2, 2019.

23        The facts of this case are as follows.  Plaintiff Maria Rodriguez ("Plaintiff") worked for

24   Defendant New Hampshire Ball Bearings, Inc. ("Defendant" or "NHBB") in the Assembly

25   Department at Defendant's Chatsworth, California facility from August 28, 1989 to April 2016.

26   Plaintiff asserts that beginning in 2006, she experienced symptoms of depression, anxiety, and

27   panic.  Plaintiff's condition caused her to begin an extended medical leave in April 2015.  Plaintiff

28   regularly provided Work Status Reports from her treating physicians to Defendant's Human

Resources Department informing Defendant of the status of her medical condition.  The last of these Work Status Reports, submitted prior to Plaintiff's termination, placed her off work from April 6, 2015 to April 10, 2016.  Plaintiff was never formally released to return to work by any of her treating physicians after April 28, 2015.

Plaintiff contends that she met with Donna Marcinkowski, Senior Manager of Human Resources for Defendant, in June or July of 2015 and that she was informed that she would be entitled to six months of full benefits while on medical leave and that she could be placed in her same or another position with Defendant if she returned from her leave within one year.  On or about August 18, 2015, NHBB sent a letter by mail to Plaintiff, informing her that her FMLA-protected leave of 12 weeks expired on June 30, 2015.  In addition, the letter informed Plaintiff that her reinstatement could not be guaranteed if she were to return to work, but that on her release to return to work, she was to contact the Human Resources department so that Defendant could determine whether there were any vacant positions for which Plaintiff was qualified.  On or about October 6, 2015, six months after Plaintiff's medical leave began, a follow-up letter was sent to Plaintiff's residence informing her that her benefits would terminate on October 31, 2015 and would transfer over under her spouse's plan immediately thereafter.  This letter reiterated that Defendant's Human Resources Department would determine, if and when she was ultimately released by her doctors to return to work, whether there were any open and available positions for her.  Plaintiff does not recall receiving either letter, but Defendant has produced copies of both in discovery.

According to Defendant's Senior Manager of Human Resources, it was Defendant's policy and practice at all times relevant to this case to contract with one or more staffing companies to hire hourly workers for the Chatsworth facility when needed.  Unless specifically engaged for a temporary purpose, such as to fill a leave of definite duration, these workers were expected to continue in regular positions with Defendant if they showed satisfactory performance in their job duties after an initial probationary period during which they remained employed with the staffing company.  Assembly Manager Ung Kim confirmed that temporary workers are sometimes hired as full-time NHBB employees.  These employees were part of the regular hourly workforce at

1   NHBB, and their positions were deemed "filled," and therefore not available, with respect to other

2   applicants.

3          When she attempted to return to work on April 11, 2016, Plaintiff was informed that her

4   employment had been terminated.  Defendant contends that it considered whether another position

5   might be available to Plaintiff, and that it was determined that there were no vacant positions for

6   which she was qualified.  On or about April 14, 2016, Marcinkowski sent a letter to Plaintiff

7   informing her that her position had been filled and that there were no openings in the Assembly

8   Department, but that NHBB would consider rehiring Plaintiff in the future if there were any

9   openings for which Plaintiff wished to apply.  This letter was received and signed for by "M.

10  Rodriguez."  Plaintiff has not applied for another position with NHBB and explained in response

11  to Defendant's Interrogatories Nos. 5-8 that she was "unable to secure employment due to her

12  injuries" and "has not submitted employment applications due to her injuries since April 14,

13  2018."

14         Plaintiff contends that she was terminated due to her disabilities and/or perceived

15  disabilities, medical condition, medical leave and engagement in protected activities.  Plaintiff

16  asserts two causes of action against Defendants: (1) wrongful termination in violation of public

17  policy, and (2) retaliation under California Labor Code § 98.6.  Plaintiff also discusses "failure to

18  engage in a good faith interactive process" in her Opposition Brief; however, she has not brought a

19  claim for failure to engage in the interactive process.  Therefore, any arguments on that issue have

20  been considered only to the extent they relate to Plaintiff's claims of wrongful termination and

21  retaliation.

22         Summary judgment is appropriate where there is no genuine issue of material fact and the

23  moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317

24  (1986).  To meet its burden of production, "the moving party must either produce evidence

25  negating an essential element of the non-moving party's claim or defense or show that the

26  nonmoving party does not have enough evidence of an essential element to carry its ultimate

27  burden of persuasion at trial."  *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir.

28  2000).  Once the moving party meets its initial burden of showing there is no genuine issue of

material fact, the opposing party has the burden of producing competent evidence and cannot rely on mere allegations or denials in the pleadings. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Id.*

As a preliminary matter, Plaintiff is not entitled to relief under Federal Rule of Civil Procedure 56(d) due to Plaintiff's inability to take the deposition of Donna Marcinkowski. Rule 56(d) provides that if the party against whom summary judgment is sought "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," then the Court may "defer considering the motion or deny it" or "issue any other appropriate order." Both parties identified Marcinkowski in their initial disclosures, and in September 2018, they agreed to set her deposition for November 30, 2018. Plaintiff cancelled the deposition and filed an ex parte application for an order allowing the deposition to be conducted remotely on November 28, 2018. That same day, this Court denied the ex parte application.

## I. <u>Wrongful Termination</u>

In California, at-will employees may bring a tort action for wrongful termination if they are terminated for a reason that violates fundamental public policy, including for exercising their rights under the CFRA, FEHA, FMLA, and similar laws. *See Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 176 (1980). It is undisputed that Plaintiff was provided with all leave rights afforded to her by the CFRA and FMLA, and she does not bring claims under either statute. Although she does not bring any claims directly under the FEHA either, Plaintiff's first cause of action for violation of public policy is based on the public policies behind the FEHA. Under the FEHA, an employer is required to provide a reasonable accommodation for an employee's medical condition unless such accommodation would pose an undue hardship on the employer. Cal. Gov't Code § 12940(m)(1); 2 Cal. Code Regs. § 11068(a). To establish liability under the FEHA, an employee bears the burden of proving that she was a "qualified individual" who could perform the essential functions of her job with or without reasonable accommodation. Cal. Gov't Code § 12940(a)(1)-(2); *Green v. California*, 42 Cal. 4th 254, 262 (2007). Here, Plaintiff was not a qualified individual on April 11, 2016 when she returned from her prolonged medical leave of over one

year.  She failed to present any certification that she was able to return to work and perform the

essential functions of her job with or without reasonable accommodation.  The evidence supports

Defendant's position that she had not been released to return to work and had not informed

Defendant of any date on which her leave would come to an end.

According to one of Plaintiff's treating physicians, Dr. Gerald Watkins, Plaintiff was not

ready to return to work on April 11, 2016.  On March 31, 2016, Watkins met with Plaintiff and

issued to Plaintiff a signed Work Status Report stating "[t]his patient is placed off work from

4/6/2015 to 4/10/2016" and scheduling a follow-up appointment for 10 weeks later, which would

have been in June of 2016.  Watkins testified at his deposition, "If I had intended for [Plaintiff] to

return to work, I would have also said, 'I release her to return to work on such-and-such date.'"

This testimony is corroborated by comparison of the March 31, 2016 Work Status Report to others

which did contain statements indicating that "[t]he patient was evaluated and deemed able to

return to work at full capacity on [date]," just below the line stating the period of time during

which Plaintiff was placed off work.  In fact, Plaintiff was previously deemed able to return to

work by her doctors three times near the start of her extended medical leave, on April 15, 21, and

28 of 2015; however, she returned to the doctor on each occasion and was given Work Status

Reports further extending her medical leave.  None of the eleven Work Status Reports issued

between April 28, 2015 and March 31, 2016 released Plaintiff to work in any capacity.  Watkins

testified that he did not release Plaintiff to return to work and that he did not believe she was ready

to return to work on April 11, 2016 "[b]ecause her condition had not significantly improved and

was largely unchanged."  Plaintiff's own deposition supports this testimony that her condition was

largely unchanged.  When asked whether she felt that her symptoms "were not under control,"

Plaintiff answered "Yes."  She further agreed that her symptoms were not under control until April

10, 2016 and went on to say that "[t]hey got worse" after that date.  In addition, Plaintiff stated

that she could not remember whether she took any steps to inform Defendant that she intended to

return to work on April 11, 2016.

"If one is not able to be at work, one cannot be a qualified individual."  *Samper v.*

*Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quoting *Waggoner v. Olin*

5

1    *Corp.*, 169 F.3d 481, 482 (7th Cir. 1999)).  *See also Markowitz v. UPS*, 2016 WL 3598728 at *5-6

2    (C.D. Cal. June 30, 2016) (granting summary judgment for defendant employer where employee

3    had not presented any medical evidence indicating that she could return to work and employer had

4    already provided a year of medical leave).

5          Plaintiff's evidence purportedly showing that she was able to return to work—which

6    consists mainly of testimony from non-treating physicians—does not create a genuine issue of

7    material fact.  Neither of Plaintiff's experts treated Plaintiff during her extended medical leave or

8    examined her at or near the time she attempted to return to work.  Testimony by these medical

9    experts that returning to work may have been "therapeutic" to Plaintiff and helpful with respect to

10   her ability to control her condition is not relevant to the issue of whether she was terminated for

11   discriminatory reasons or retaliated against.  In fact, Plaintiff has produced no evidence of

12   discriminatory intent, and when asked at her deposition what made her believe she had been fired

13   due to her taking medical leave, Plaintiff's response was "[b]ecause I can't find any other reason."

14   Nor is expert testimony on the way in which her symptoms may have been exacerbated by her

15   firing relevant to either cause of action, except as it relates to the issue of damages.

16         Moreover, ruling in Plaintiff's favor would require finding that NHBB had an obligation to

17   displace another employee or create a new position to accommodate Plaintiff.  Plaintiff states in

18   her Opposition Brief that "Defendant could have and should have brought their permanent

19   employee, Ms. Rodriguez, back instead of protecting a temporary employee."  However,

20   Defendant was not obligated to hold open Plaintiff's position or reassign her to another position

21   when one was not available.  2 Cal. Code Regs. § 11068(d)(4) ("The employer or other covered

22   entity is not required to create a new position to accommodate an employee with a disability to a

23   greater extent than an employer would offer a new position to any employee, regardless of

24   disability.").  A defendant employer is "only obligated to reassign [the employee] to another

25   position within the company if there [is] an *existing, vacant* position for which [the employee is]

26   qualified."  *Watkins v. Ameripride Services*, 375 F.3d 821, 828 (9th Cir. 2004) (emphasis in

27   original).  See also *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 680 (7th Cir. 1998) ("Even

28   temporary workers do not have to be bumped out of a job…unless the temporary worker was

1   simply filling in for a particular person during an absence.").  Defendant has established that there

2   were no existing, vacant positions in the Assembly Department when Plaintiff attempted to return

3   to work, and Plaintiff has not created a genuine dispute on that issue.  Because there were no

4   vacant positions available to Plaintiff with or without accommodations, Defendant does not need

5   to demonstrate that accommodating Plaintiff would have caused the company undue hardship.  Put

6   simply, an employer is not required to displace other employees or create a new position in order

7   to accommodate an employee returning from extended medical leave.

8         Plaintiff has cited to no law requiring NHBB to hold her position open indefinitely,

9   terminate another employee (temporary or otherwise) to vacate a position, or create a new position

10   for her.  Plaintiff contends that her position was not filled by a temporary worker while she was on

11   leave, but evidence submitted by Defendant shows that someone did in fact take on Plaintiff's

12   work duties and that there were no vacant positions in the Assembly Department on April 11,

13   2016.  The deposition testimony of Assembly Manager Ung Kim confirms that the department

14   was not short-staffed during Plaintiff's absence.

15         Defendant has presented sufficient evidence showing that Plaintiff was provided with all

16   benefits required by law and was fired for a non-discriminatory reason, namely that her position

17   had been filled during her long-term indefinite leave of absence and that there were no vacant

18   positions for which she was qualified.  To quote the California Court of Appeal in *Nelson v.*

19   *United Technologies*, "[t]o say that [Defendant] provided [Plaintiff] with more benefits than []

20   required while simultaneously intending to fire him for exercising his [] rights requires a leap we

21   are not prepared to take."  74 Cal. App. 4th 597, 614 (1999).  Although the focus was on the

22   CFRA in *Nelson*, the reasoning behind that decision applies equally to this case.  It would defy

23   logic to conclude that NHBB provided Plaintiff with all rights granted to her by state and federal

24   law, as well as benefits not required by the law, and simultaneously intended to fire her for

25   exercising her rights, especially here where Plaintiff had taken significant leave time in the past

26   and was able to return to her position once she was released to work.  Accordingly, there is no

27   genuine issue of material fact, and Defendant is entitled to judgment as a matter of law on

28   Plaintiff's first cause of action.

II. **Retaliation**

Plaintiff's second cause of action is brought pursuant to California Labor Code § 98.6, which prohibits an employer from retaliating against an employee for filing a claim with the Labor Commissioner, or for exercising any rights afforded to the employee under the Labor Code. *See* Cal. Lab. Code § 98.6(a), (b). Plaintiff does not allege that she filed a complaint with the Labor Commissioner. Nor does she specify any rights under the Labor Code which she was allegedly terminated for exercising. Accordingly, Plaintiff's second cause of action fails as a matter of law.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is GRANTED. (Dkt. No. 22).

Dated: January 16, 2019.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

8